IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) DR. AMEEL SAM COURY; | ) | |
| (2) LYNN COURY; and (3) JULIE | ) | |
| SOLHEIM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case Number CIV-09-211-C |
| | ) | |
| (1) STEVE HELMER, in his individual | ) | |
| capacity; (2) THE CITY OF OKLAHOMA | ) | |
| CITY, a municipality of the State of | ) | |
| Oklahoma; and (3) THE FRATERNAL | ) | |
| ORDER OF POLICE, LODGE 123, a | ) | |
| Non-Profit Corporation, jointly and | ) | |
| severally, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a Second Amended Complaint on June 8, 2009, alleging a variety of constitutional violations pursuant to 42 U.S.C. § 1983, along with a number of related state law claims, against Defendants stemming out of a confrontation between Plaintiffs and Defendant Helmer. Defendants have filed three separate Motions to Dismiss.

### BACKGROUND

On May 31, 2007, Plaintiff Solheim received a telephone call from the Oklahoma County Sheriff's Department concerning some cattle that had gotten loose near the location where Plaintiff Solheim's father, Plaintiff Ameel Coury, keeps cattle. Plaintiff Solheim drove to the location to determine whether the cattle in fact belonged to her family. Upon

her arrival, Plaintiff Solheim contends that Defendant Helmer, an officer with the Oklahoma City Police Department, began yelling profanities at her. Defendant Helmer checked Plaintiff Solheim's driver's license and insurance verification and then asked whether the cows belonged to her family. After checking the cattle's ear tags, Plaintiff Solheim told him that the cattle belonged to another man, whose name she gave to Defendant Helmer. Defendant Helmer then told Plaintiff Solheim to leave the area. She subsequently drove to her parent's driveway, located nearby, then proceeded back to the scene to ask for Defendant Helmer's name and badge number. After initially telling her that she didn't need that information, Defendant Helmer yelled out his badge number and Plaintiff Solheim got close enough to read his name on his uniform.

Shortly after Plaintiff Solheim arrived at her parents' home, Defendant Helmer and another officer rang the doorbell. Both Plaintiff Solheim and her mother, Plaintiff Lynn Coury, answered the door. Plaintiffs contend that Defendant Helmer began demanding answers from Plaintiff Lynn Coury regarding the ownership of the cattle and that at one point Defendant Helmer placed his hand on his gun in a threatening manner. Plaintiff Solheim attempted to answer Defendant Helmer's questions, but he again began screaming profanities at her. Plaintiff Lynn Coury then answered the questions, providing Defendant Helmer with the contact information for the cattle's owner. The officers then left the premises.

Soon thereafter, Plaintiff Ameel Coury arrived on the scene where the cattle had escaped to verify that everything was under control and see if he could assist with the cattle. He approached Defendant Helmer, who immediately started screaming profanity. Plaintiff

2

Ameel Coury contends that he asked Defendant Helmer to calm down, which further angered him and appeared to "send him into a rage."  (See Second Amended Complaint, Dkt. No. 44, at 6.)  Defendant Helmer continued to yell profanity and threats toward Plaintiff Ameel Coury, threatening to take him to jail.  At that point, Defendant Helmer began to handcuff Plaintiff Ameel Coury, who contends that he complied, giving Defendant Helmer his wrists.  According to Plaintiff Ameel Coury, this caused Defendant Helmer to place his hand on his gun.  Defendant Helmer then roughly grabbed Plaintiff Ameel Coury, handcuffed him too tightly, physically manhandled him, and placed him in the back of a patrol car.  Approximately forty-five minutes later, another officer loosened the handcuffs, although they were not removed.

Plaintiff Ameel Coury was subsequently transported to the Oklahoma County jail, where he was given a citation for "Interfering with a police officer by obstructing him."  (Id. at 7.)  This charge was subsequently dismissed without prosecution.  Immediately upon his release from jail, Plaintiff Ameel Coury stated that he wished to file a complaint and was directed across the street to obtain the proper forms.  On May 30, 2008, all three Plaintiffs filed a formal complaint with the City of Oklahoma City.  No action was taken by the City.

Plaintiffs then filed the present complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff Ameel Coury's Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  Plaintiffs also contend that Defendant City and Defendant Fraternal Order of Police (Defendant FOP) fostered officers' use of steroids by failing to implement drug testing policies designed to detect the presence of such drugs, despite knowing that

certain officers were engaging in steroid use.  Plaintiffs also allege state law claims of false

arrest, use of excessive force, abuse of process, conspiracy, negligence, and gross negligence

against Defendants Helmer and City.  Defendants filed three separate motions to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court must accept the complaint

as true and must construe all facts in the light most favorable to the plaintiff.  Seamons v.

Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  Consistent with the liberal pleading

standards of Fed. R. Civ. P. 8(a)[1], the plaintiff need not plead detailed factual allegations, but

the face of the complaint must indicate a plausible right to relief that is not simply

speculative.  James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270 (11th Cir.

2008).  A complaint containing only conclusory allegations without any factual support will

not survive a motion to dismiss.  Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint."  Bell Atlantic Corp., 550 U.S. 544, 563

(2007).

## DISCUSSION

---

[1]  Fed. R. Civ. P. 8(a) provides that "A pleading that states a claim for relief must
contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief."
This has been interpreted to require the complaint to provide sufficient notice to the defendant
regarding what the plaintiff is claiming and the grounds upon which the claim is made. Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 555 (2007).

4

1.      **Motion to Dismiss Plaintiffs' Equitable and Conspiracy Claims and Request for Award of Punitive Damages (Dkt. No. 50)**

Plaintiffs' Second Amended Complaint seeks a variety of injunctive relief, including preventing Defendants City and FOP from:  (1) developing a drug testing program that fails to test for steroid use; (2) negotiating any contract that fails to include steroid testing; (3) failing to investigate any citizen complaints that indicate possible "steroid rage;" (4) failing to refer citizen complaints indicating "steroid rage" to the Oklahoma County District Attorney; and (5) failing to discipline police officers who use steroids or who have demonstrated "steroid rage."

Defendant City first contends that Plaintiffs are not entitled to injunctive relief because they cannot demonstrate a likelihood that they will suffer the same wrong in the future.  Defendant relies heavily on City of Los Angeles v. Lyons, 461 U.S. 95 (1983).  In Lyons, the plaintiff brought suit seeking damages, an injunction, and declaratory relief after an incident with officers of the Los Angeles Police Department where the plaintiff claims he was put into a choke hold without any provocation or justification.  The Supreme Court found that the plaintiff did not have standing to seek injunctive relief because he could not demonstrate a real and immediate threat that he would suffer future injury from the use of choke holds by police officers.

Plaintiffs allege that Lyons does not control the present analysis.  Rather, they contend that there is an on-going and systematic violation of law by the Oklahoma City police department through the uncontrolled use of steroids by some officers which constitutes a

direct and immediate threat to Plaintiff Ameel Coury and every other citizen of Oklahoma City. The Court finds this argument unavailing, noting that in <u>Lyons</u>, the plaintiff similarly contended that police officers "'pursuant to the authorization, instruction and encouragement of defendant City of Los Angeles, regularly and routinely apply these choke holds in innumerable situations where they are not threatened by the use of any deadly force whatsoever.'" <u>Id.</u> at 98. Here, the chance that Plaintiffs will again encounter Oklahoma City police officers and be subjected to what they term "steroid rage" is as speculative as the allegations in <u>Lyons</u> that were found not to present a justiciable case or controversy, and therefore Plaintiffs do not have standing to seek injunctive relief.

Next, Defendant City argues that Plaintiffs failed to state a § 1983 conspiracy claim[2] against it pursuant to the strictures of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), because they failed to name any policymaker at Defendant City who purportedly engaged in a conspiracy, nor did they demonstrate that any conspiracy to violate their civil rights ever existed. Plaintiffs contend, however, that their allegations are sufficient. They claim that both Defendants City and FOP have knowledge that police officers illegally use steroids, they negotiated a collective bargaining agreement that did not provide for steroid testing, Defendant Helmer's actions, attributable to Defendant City, constitute an act in furtherance of the conspiracy, and Plaintiffs suffered a deprivation of rights as a result.

_____

[2] Defendant City does not challenge Plaintiffs' § 1983 claim for municipal liability. In fact, Defendant City expressly states that, because the Second Amended Complaint alleges a failure to train and a failure to supervise, it is sufficient to withstand a motion to dismiss. (<u>See</u> Def. City's Mot. to Dismiss, Dkt. No. 50, at 4 n.1.)

In order to state a conspiracy claim pursuant to § 1983, Plaintiffs must plead sufficient facts to demonstrate both that a conspiracy existed and that an actual deprivation of rights has occurred.  Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995). To demonstrate the existence of a conspiracy, Plaintiffs' factual allegations must show both "an agreement and concerted action amongst the defendants."  Tonkovich v. Kan, Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998).

The Court finds that Plaintiffs' allegations are insufficient to state a claim of conspiracy pursuant to § 1983.  The fact that the collective bargaining agreement entered into between both Defendants fails to address steroid use by police officers, absent more, is insufficient to show an agreement to permit or encourage steroid use.  Therefore, Plaintiff's § 1983 conspiracy claim will be dismissed.

Finally, Defendant City contends that punitive damages are not authorized in a § 1983 action against a municipality.  In Plaintiffs' response, they indicate that nothing in their complaint should be construed as requesting relief in the form of punitive damages. Accordingly, because Plaintiffs state that they are not seeking punitive damages, Defendant City's argument on this point is moot.

2.      **Motion to Dismiss Plaintiffs Lynn Coury and Julie Solheim (Dkt. Nos. 51, 52)**

Defendants City and Helmer (Defendants) both contend that Plaintiffs Lynn Coury and Julie Solheim (Plaintiffs) failed to state a claim for relief against them, and should therefore be dismissed from this action.  Defendants contend that neither Plaintiff properly alleged a constitutional violation, which is fatal to any claim under 42 U.S.C. § 1983.  With respect to Plaintiffs' state law claims, Defendants first contend that the Court lacks jurisdiction over them pursuant to 28 U.S.C. § 1367 because neither Plaintiff has alleged any federal cause of action.  Further, Defendants argue that neither Plaintiff has sufficiently alleged the elements of any state law cause of action listed in the Second Amended Complaint.

Plaintiffs contend, however, that they have properly alleged an unreasonable seizure in violation of their Fourth Amendment rights, and that they have therefore pleaded facts sufficient for a § 1983 claim.  It has long been established that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual."  Fla. v. Bostick, 501 U.S. 429, 434 (1991) (internal citation omitted).  The Tenth Circuit considers the following factors in determining whether an encounter is consensual or instead constitutes a seizure:

> "the threatening presence of several officers; the brandishing of a weapon by
> an officer; some physical touching by an officer; use of aggressive language
> or tone of voice indicating that compliance with an officer's request is
> compulsory; prolonged retention of a person's personal effects such as
> identification and plane or bus tickets; a request to accompany the officer to

the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public."

United States v. Ringold, 335 F.3d 1168, 1172 (10th Cir. 2003) (quoting United States v. Hill, 199 F.3d 1143, 1147-48 (10th Cir.. 1999)).

Applying these factors to the present case, the Court finds that Plaintiffs have not pleaded facts sufficient to demonstrate that a seizure occurred. Only two officers arrived at the residence, and neither brandished a weapon, although Plaintiffs allege that Defendant Helmer placed his hand on his gun in a threatening manner. Plaintiffs contend that Defendant Helmer's tone of voice indicated that answering his questions was compulsory and it is clear that the questioning did not occur in a public place in the presence of others. However, there are no allegations that either officer touched Plaintiffs at any time, retained their personal effects for any period of time, or requested that either woman accompany them to the station. Plaintiffs' allegations, without more, are insufficient to plead a claim pursuant to § 1983, and must therefore be dismissed.

Additionally, Plaintiffs contend that they sufficiently pleaded facts demonstrating an assault. Oklahoma has adopted the definition of assault found in the Restatement (Second) of Torts § 21 (1965). Accordingly, "(1) An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Id.; see also Fenwick v. Okla. State Penitentiary, 1990 OK 47, ¶ 4 n.4, 792 P.2d 60, 67 n.4 (Kauger, J., dissenting).

Plaintiffs contend that the elements of assault are satisfied because Defendant Helmer used abusive, profane, and threatening language and then put his hand on his gun in a threatening manner, causing Plaintiffs to fear a harmful or offensive touching.  The Court finds that the allegations contained in the Second Amended Complaint are sufficient to state a claim of assault against Defendant Helmer, whose motion will be denied on this point.

Plaintiffs' claim of assault against Defendant City is premised on the doctrine of respondeat superior.  Under Oklahoma law, an employer may only be held liable for the torts of its employees when they are committed in the course and within the scope of the employment. Baker v. Saint Francis Hosp., 2005 OK 36, ¶ 10, 126 P.3d 602, 605.  Although an assault on a third person is generally not considered within the scope of employment, an employer may nevertheless be held liable "where the act is incidental to and done in furtherance of the business of the employer even though the servant or agent acted in excess of the authority or willfully or maliciously committed the wrongs." Id.

The Court finds Plaintiffs allegations sufficient at this stage to state a claim of assault against Defendant City.  At the time of the incident, Defendant Helmer was on duty and was attempting to determine the ownership of escaped cattle.  In attempting to perform this function, Defendant Helmer questioned Plaintiffs in a manner that they contend rises to the level of an actionable assault.  Accordingly, Defendant City's motion will be denied on this point.

Defendants' final argument is that the Court lacks jurisdiction to consider Plaintiffs' assault claim under 28 U.S.C. § 1367.  This provision states:

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

28 U.S.C. § 1367(a) (emphasis added). Congress has explicitly provided that district courts have supplemental jurisdiction over all claims, including those brought by different parties, that are part of the same case or controversy. Accordingly, Plaintiffs' lack of a federal claim against Defendants does not deprive the Court of jurisdiction over their state law claim for assault. Defendants' motions will be denied on this point.

**3.    Motion to Dismiss Second Amended Complaint (Dkt. No. 53)**

According to Defendant FOP, Plaintiffs' allegations are insufficient to state a claim for relief against it. Initially, the Court notes that it has already determined that the Second Amended Complaint fails to state a claim for conspiracy under 42 U.S.C. § 1983. In addition, the state law claims are only asserted against Defendants City and Helmer. Accordingly, the only claim that the Court must consider here is Plaintiffs' § 1983 claim not arising out of a conspiracy.

Federal law imposes liability upon anyone who, under color of state law, causes a deprivation of the constitutional rights of another. 42 U.S.C. § 1983. It is clear that "the only proper defendants in a Section 1983 claim are those who '"represent [the state] in some capacity, whether they act in accordance with their authority or misuse it."'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting Nat'l Collegiate

Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)).  In determining whether a private party constitutes a state actor for § 1983 purposes, the Supreme Court has articulated a variety of tests:

> In some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party that there is a "symbiotic relationship" between them.  In addition, the Court has held that if a private party is "'a willful participant in joint activity with the State or its agents,'" then state action is present.  Finally, the Court has ruled that a private entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action.

Id. (internal citations omitted).

Plaintiffs contend that Defendant FOP acted in concert with Defendant City in preventing the imposition of a steroid testing policy.  This, however, is the basis for Plaintiffs' § 1983 conspiracy claim, which the Court found improperly pleaded.  Applying the above tests to the facts as alleged by Plaintiffs, there is no basis for holding Defendant FOP liable as a state actor.  As Defendant FOP notes, "labor organizations have traditionally been considered private, not public, entities." Hovan v. United Bhd. of Carpenters & Joiners of America, 704 F.2d 641, 642 (1st Cir. 1983).  Accordingly, Plaintiffs' Second Amended Complaint fails to state a claim for relief against Defendant FOP pursuant to 42 U.S.C. § 1983.

## CONCLUSION

Accordingly, the Court finds that Defendant City's Motion to Dismiss Plaintiffs' Equitable and Conspiracy Claims and Request for Punitive Damages (Dkt. No. 50) is GRANTED.  Because Defendant City did not address Plaintiffs' § 1983 claim (Count I) it remains, but the § 1983 conspiracy claim (Count II) is DISMISSED WITHOUT PREJUDICE.  Defendant City's Motion to Dismiss Plaintiffs Lynn Coury and Julie Solheim (Dkt. No. 51) and Defendant Sergeant Steve Helmer's Joinder in Defendant City of Oklahoma City's Motion to Dismiss Plaintiffs Lynn Coury and Julie Solheim (Dkt. No. 52) are GRANTED IN PART and DENIED IN PART.  Their § 1983 claims are DISMISSED WITHOUT PREJUDICE, but their claims for assault remain.  FOP's Motion to Dismiss Second Amended Complaint (Dkt. No. 53) is GRANTED.  No claims remain against Defendant FOP.

Finally, the following motions, filed before the Second Amended Complaint, are moot:  Motion to Dismiss (Dkt. No. 13); Motion to Dismiss Official Capacity Claims (Dkt. No. 16); Motion to Dismiss (Dkt. No. 25); Motion to Dismiss First Amended Complaint (Dkt. No. 36); Motion to Dismiss Plaintiff's Equitable Claims and Request for Punitive Damages (Dkt. No. 40); Motion to Dismiss Plaintiffs Lynn Coury and Julie Solheim (Dkt. No. 41); and Motion for Joinder (Dkt. No. 43).

IT IS SO ORDERED this 17th day of September, 2009.

ROBIN J. CAUTHRON
United States District Judge

13